IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 2, 2017

**STATE EX REL. SCHRITA O. v. ROBERT T.**

**Appeal from the Juvenile Court for Shelby County**
**No. Z4680     Dan H. Michael, Judge**

_____

**No. W2017-00073-COA-R3-JV**

_____

This is an appeal from the juvenile court's order establishing paternity and retroactive child support, for a child who was born in 1996 and reached majority during the course of these proceedings. In 2014, with the assistance of a Tennessee Department of Human Services Title IV-D Staff Attorney, the child's mother filed a UIFSA petition in the Juvenile Court of Shelby County to establish paternity and an initial child support order and to recover retroactive child support for her son. Genetic testing confirmed Father's parentage, and the trial court ordered Father to pay retroactive child support in the amount of $127,530.00. Father timely appealed. For the following reasons, we affirm in part and vacate in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed in Part, Vacated in Part and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY, J., joined. FRANK G. CLEMENT, JR., P.J., M.S., concurring in part and dissenting in part.

Bryan R. Huffman, Covington, Tennessee, for the appellant, Robert T.

Herbert H. Slatery, III, Attorney General and Reporter; and Alexander S. Rieger, Deputy Attorney General, for appellees, Schrita O. and State of Tennessee.

**OPINION**

**BACKGROUND AND PROCEDURAL HISTORY**

In 2014, Schrita O.[1] ("Mother," or "Appellee"), a resident of Mississippi, initiated these proceedings in accordance with the Uniform Interstate Family Support Act

---

[1] In cases involving a minor child, it is the Court's policy to redact names in order to protect the

("UIFSA") to establish paternity and an initial child support order and to recover retroactive child support for her child, Shamar O., born November 18, 1996. Mother's petition indicated that Robert T. ("Father," or "Appellant") was Shamar O.'s putative Father, and that she was Shamar O.'s biological mother and sole physical caretaker. Attached as an exhibit to Mother's petition is a "Decree Appointing General Guardian and Granting Letters of Guardianship" from the Chancery Court of Hinds County, Mississippi that awarded guardianship of Shamar O. to his maternal grandfather ("Grandfather") Luster O., Jr. shortly after his birth with both parents' consent.

With the assistance of a Title IV-D attorney,[2] Mother filed a petition to establish paternity and support for Shamar O. in the Juvenile Court of Shelby County. The juvenile court ordered Father to submit to genetic testing, and the test revealed a 99.99% statistical probability that Father was Shamar O.'s biological father.

On January 25, 2016, after several continuances, including a continuance to allow Father's attorneys to conduct discovery, a hearing on the petition was held before a Magistrate of the Juvenile Court. In written findings entered on February 24, 2016, the Magistrate found that Father had an obligation to support the child and ordered Father to pay prospective child support in the amount of $550.00 a month and retroactive child support of $9,900.00.[3] Father timely filed a request for rehearing before the presiding juvenile court judge.[4]

---

child's identity. *See, e.g.*, *In re Elias Mc.*, No. M2015-01202-COA-R3-PT, 2016 WL 3995756, at *1 (Tenn. Ct. App. July 20, 2016).

[2] The Tennessee Department of Human Services is the authorized state agency for the enforcement of the child support program in the State of Tennessee under Title IV-D of the Social Security Act. *See* Tenn. Comp. R. & Regs. 1240-2-4-.01. The Department contracts with private agencies or companies to assist individuals in, *inter alia*, setting and collecting child support. *Id*. Since at least 2009, Shelby County has contracted with a private company to provide IV-D services. The attorneys employed or retained by the company to serve in child support cases such as this case are commonly referred to as Title IV-D attorneys. Tenn. Comp. R. & Regs. 1240-2-4-.01.

[3] Although the juvenile court did not explicitly state that it concluded Mississippi law governed in this case, it appears that the juvenile court applied Mississippi law. Under Mississippi law, the duty to support one's child generally terminates when the child turns twenty-one years old, and, unlike under Tennessee law, Mississippi law provides that arrears are limited to those accruing within one year from the date the petition to establish support is filed. *See* Miss. Code Ann. § 93-11-65(8)(a)(i); Miss. Code Ann. § 93-9-11.

[4] Tennessee Code Annotated Section 37-1-107(d) states that, "[a]ny party may, within (10) days after entry of the magistrate's order, file a request with the court for a *de novo* hearing by the judge of the juvenile court."

- 2 -

On November 16, 2016, a hearing was conducted before a Special Judge of the Juvenile Court who had been appointed by the Juvenile Court Judge to hear the case. While both parents testified, they offered conflicting testimony regarding whether Grandfather or Mother served as Shamar O.'s physical custodian during his childhood. However, the testimony is undisputed that Father never had visitation with or provided monetary support for Shamar O. to either Mother or Grandfather. On November 28, 2016, the juvenile court entered a final order setting aside the Magistrate's order. In its order, the juvenile court specifically found Father to be "the father of the child" and ordered Father to pay, *inter alia*,[5] $127,530.00 in retroactive child support.

Father timely appealed the retroactive child support award.

## ISSUES PRESENTED

Father raises the general issue of whether the trial court erred in setting child support pursuant to the UIFSA. However, we perceive that Father raises the following six issues, which we have reordered and reworded as follows:

I. Whether the juvenile court had subject-matter jurisdiction to establish Shamar O.'s paternity and enter an initial support order.

II. Whether the juvenile court's order lacks sufficient findings of fact and conclusions of law to support its finding that Mother was Shamar O.'s physical custodian or caretaker.

III. Whether the evidence preponderates against the juvenile court's finding that Mother was the child's physical custodian or caretaker.

IV. Whether Mother lacked standing to petition the juvenile court to establish paternity and set initial support for Shamar O.

V. Whether the case should be dismissed because Grandfather was not joined as a party.

VI. Whether the trial court abused its discretion in calculating the parties' parenting time on the child support worksheets.

---

[5] The trial court also ordered Father to pay for related court costs including the cost of the DNA test. However, Father has only appealed the retroactive child support award.

- 3 -

## STANDARD OF REVIEW

In an appeal from a bench trial, we review the trial court's factual findings *de novo* upon the record. Tenn. R. App. P. 13(d). We presume that the factual findings of the trial court are correct, unless the evidence preponderates otherwise. *Id*. However, we review questions of law *de novo*, with no presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993) (citation omitted).

## DISCUSSION

This case originated upon Mother's filing of a UIFSA petition to establish paternity and support for Shamar O.[6] When a petitioner seeks an initial support order and the establishment of parentage under the UIFSA, Tennessee courts apply the procedural and substantive law generally applicable to similar proceedings originating in Tennessee.[7] *See* Tenn. Code Ann. § 36-5-2303. Under Tennessee law, the "caretaker," or physical custodian of a child may initiate proceedings to establish child support.[8] Tenn.

_____

[6] All states have enacted a version of UIFSA, which creates a single, comprehensive, framework for establishing and enforcing child support orders across state lines. *See* Tenn. Code Ann. §§ 36-5-2401 *et seq.*; Richards, Tennessee Family Law § 10-14-(o)(1) (citation omitted). A party may initiate proceedings to establish paternity and set child support by filing a petition on a UIFSA form or by seeking the assistance of the Title IV-D agency in the county where the defendant resides. Tenn. Code Ann. § 36-5-405(a). Tennessee Code Annotated Section 36-5-2305 provides Tennessee courts with the authority to establish an initial support order and determine the parentage of a child in UIFSA proceedings. *See* Tenn. Code Ann. § 36-5-2305(b)(1); Tenn. Code Ann. § 36-5-2401. Tennessee Code Annotated Section 36-5-2401 allows a Tennessee court to order a parent residing in Tennessee to pay for the support of a child residing across state lines, if no custody order has been issued in that state. Tenn. Code Ann. § 36-5-2401(a)(1); *State ex. rel. Irwin v. Mabalot*, No. M2004-00614-COA-R3-CV, 2005 WL 3416293, at *3 (Tenn. Ct. App. Dec. 13, 2005).

[7] Specifically, Tennessee Code Annotated Section 36-5-2303 provides, "a responding tribunal of this state shall: (1) apply the procedural and substantive law generally applicable to similar proceedings originating in this state and may exercise all powers and provide all remedies available in those proceedings; and (2) determine the duty of support and the amount payable in accordance with the law and support guidelines of this state."

[8] The full definition of "Caretaker" is, "[t]he person or entity providing primary care and supervision of a child. The caretaker is the child's Primary Residential Parent. The caretaker may be a parent of the child, a non-parent person or agency who is voluntarily or, pursuant to tribunal order or other legal arrangement, is providing care and supervision of the child (for example, the child's grandparent). A caretaker may be a private or public agency or person not related to the child providing custodial care and supervision for the child through voluntary or involuntary placement by the child's parent, non-parent relative, or other designated caretaker, or by court order or other legal arrangement (for example, a foster parent). In these rules, the designation "non-parent caretaker" refers to a private or public agency, a non-parent person who may or may not be related to the child, or another designated caretaker who provides the primary care and supervision for the child." Tenn. Comp. R. & Regs. 1240-2-4-.02.

Comp. R. & Regs. 1240-02-04.02(6) (defining "caretaker" as "the person or entity providing primary care and supervision of a child.") Although Shamar O. reached majority during these proceedings, Tennessee law provides that under circumstances such as these, a court may award retroactive support.[9]

## I. SUBJECT-MATTER JURISDICTION OF JUVENILE COURT

Father raises several issues in this appeal which generally relate to the trial court's classification of Mother as Shamar O.'s caretaker.[10] Father argues that the trial court lacked subject-matter jurisdiction over the claims to establish paternity and support for Shamar O. because, according to Father, Mother was not Shamar O.'s caretaker and therefore lacked standing to initiate this suit. As explained in greater detail below, we ultimately conclude that the record supports the juvenile court's classification of Mother as Shamar O.'s physical caretaker. However, as an initial matter, we note that the juvenile court's subject-matter jurisdiction was not dependent on Mother's legal status as Shamar O.'s caretaker or capacity to bring this lawsuit.

Juvenile courts have jurisdiction to establish paternity of a child when the putative Father resides in Tennessee. *See* Tenn. Code Ann. § 36-2-307. The Department of Human Services may file an action to establish paternity without joining the parent of the child as petitioner. *See* Tenn. Code Ann. § 36-2-305(1)(D) ("A complaint to establish parentage of a child may be filed by . . . the department of human services or its contractor."); Tenn. Code Ann. § 71-3-124(c); *State ex rel. Wray v. Collins*, No. W2006-00119-COA-R3-JV, 2007 WL 836810, *3 (Tenn. Ct. App. Mar. 20, 2007). For example, in a similar case in which a grandmother sought IV-D services to establish paternity and support for her grandson, we previously stated:

> In this case, the State of Tennessee filed a complaint designated "IV-D" on behalf of Grandmother pursuant to Tenn. Code Ann. § 71-3-124(c). The State had standing to file the complaint to establish parentage of [the minor child], even if the case is styled "State of Tennessee ex rel. [Grandmother]." *See State ex rel Bissonette v. Maryland*, No. E2000-02089-COA-R3-CV, 2001 WL 422960, at *3 (Tenn. Ct. App. Apr. 26, 2001) (finding that the

---

[9] At the time, Tennessee law provided no temporal limit to child support arrears. Consequentially, the juvenile court in this case ordered Father to pay retroactive child support going back to the child's birth. However, the Tennessee statute now limits arrears to five years. *See* Tenn. Code Ann. § 36-2-311(G)(i) ("In any action for retroactive child support filed on or after July 1, 2017, retroactive child support shall not be awarded for a period of more than five (5) years from the date the action for support is filed unless the court determines, for good cause shown, that a different award of retroactive child support is in the interest of justice.").

[10] The parties offered conflicting testimony related to who served as Shamar O.'s physical custodian until he reached majority. The testimony is discussed in greater detail later in this opinion.

State had standing to file a paternity suit, even if styled 'ex rel'). According to the statute, the Department of Human Services is not even required to name the State as a party to the action. *See* Tenn. Code. Ann. § 71-3-124(c)(2).

*Collins*, 2007 WL 836810, \*3. Similarly, in this case, the State clearly had standing to bring suit to establish Shamar O.'s paternity, even though the caption is styled 'ex rel.'

Once a court has established paternity, the court **must** enter an initial child support order, including an award of retroactive child support if applicable. Tenn. Code Ann. § 36-2-311(a)(11)(A) ("Upon establishing parentage, the court shall make an order declaring the father of the child . . . [t]his order shall include the following . . . [a] determination of child support."). Having established Shamar O.'s paternity, the juvenile court was required by statute to enter an initial support order. *Id*. Accordingly, Father's claim that the trial court lacked subject-matter jurisdiction to establish support is clearly without merit.

## II. THE TRIAL COURT FOUND MOTHER WAS SHAMAR O.'S CARETAKER

We now turn to Father's argument that the trial court committed reversible error by failing to make a specific finding in its order that Mother was Shamar O.'s physical custodian until the child reached the age of majority.

"In bench trials, trial courts must make findings of fact and conclusions of law to support their rulings." *Zarecor v. Zarecor*, No. W2014-01579-COA-R3-CV, 2015 WL 4126962, at \*2 (Tenn. Ct. App. Jun. 9, 2015) (citation omitted). Tennessee Rule of Civil Procedure 52.01 states, in pertinent part:

In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment.

"Simply stating the trial court's decision, without more, does not fulfill this mandate." *Zarecor*, 2015 WL 4126962, at \*2. "There is no bright-line test by which to assess the sufficiency of factual findings, but 'the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue.'" *Id*. at \*2–3 (quoting *Lovelace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013)).

"The General Assembly's decision to require findings of fact and conclusions of law is 'not a mere technicality.'" *Id*. at \*3 (quoting *Hardin v. Hardin*, No. W2012-00273-COA-R3-CV, 2012 WL 6727533, at \*3 (Tenn. Ct. App. Dec. 27, 2012)). "Findings and conclusions serve the important purposes of facilitating appellate review and promoting

the just and speedy resolution of appeals." *Id*. Without sufficient findings, we are left to wonder on what basis the juvenile court reached its ultimate decision. *Id*.

Generally, when a trial court's order fails to comply with Tennessee Rule of Civil Procedure 52.01, the appropriate remedy is to vacate the trial court's judgment and remand the case to the trial court for written findings of fact and conclusions of law. *Id*. (citing *Hardin*, 2012 WL 6727533, at *5). "However, when the issue on appeal involves a clear legal issue or the trial court's decision is 'readily ascertainable,' we may 'soldier on' and consider the merits of the case." *Id*. (quoting *Hanson v. J.C. Hobbs Co., Inc.*, No. W2011-02523-COA-R3-CV, 2012 WL 5873582, at *10 (Tenn. Ct. App. Nov. 21, 2012)). In this case, the trial court's finding that Mother was Shamar O.'s physical custodian or "caretaker" is "readily ascertainable" from our review of the order, transcript of the testimony, and context of the proceedings.

The juvenile court judge incorporated the facts as indicated on the child support worksheets into its order by reference. "When construing orders and judgments, effect must be given to that which is clearly implied, as well as to that which is expressly stated." *See Morgan Keegan & Co., Inc. v. Smythe*, 401 S.W.3d 595, 608 (Tenn. 2013). The worksheets indicate that Mother was Shamar O.'s primary residential parent. By definition, the child's caretaker is the same person as the child's primary residential parent. Tenn. Comp. R. & Regs. 1240-02-04.02(6) ("The caretaker is the Primary Residential Parent.") Although Grandfather was undisputedly Shamar O.'s legal guardian pursuant to the Mississippi Chancery Court's order, the attached retroactive support worksheets reflect that the juvenile court found that Mother was Shamar O.'s physical caretaker because she was listed as Shamar O.'s primary residential parent.[11]

The trial court's reasoning behind its finding that Mother was Shamar O.'s caretaker is also "readily ascertainable." Although the trial court did not specifically make a credibility determination, it is clear from the order and the juvenile court judge's statements from the bench that it credited Mother's testimony that she has always been Shamar O.'s physical caretaker.[12] When the resolution of the issues of a case depends upon the truthfulness of witnesses, the trial judge is in a far better position than this Court to make credibility determinations because he is able to observe the witnesses and their manner and demeanor while testifying. *See McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Parrish v. Parrish*, No. W2013-00316-COA-R3-CV, 2013 WL 3203352, at *3 (Tenn. Ct. App. Jun. 21, 2013). While the best practice is to make specific

---

[11] Moreover, the child support worksheets award Grandfather zero parenting days and leave the space reserved for "Name of non-parent Caretaker" information blank.

[12] The juvenile court stated, "the Tennessee guidelines say it's not [legal] custody, it's possession. Whoever has possession of the child. The testimony is the mother had possession of the child throughout." Furthermore, the juvenile judge stated, in addressing counsel: "do you [have] the worksheet ready? . . . It's 365 and zero on the visitation."

findings of fact and conclusions of law in a written order, the trial court's statements from the bench provide sufficient guidance in this case for us to ascertain the trial court's basis for concluding that Mother was Shamar O.'s physical custodian. Therefore, we will "soldier on" and review the remaining substantive issued raised by Father.[13]

## III. THE PREPONDERANCE OF THE EVIDENCE SUPPORTS THE JUVENILE COURT'S FINDING THAT MOTHER WAS SHAMAR O.'S PHYSICAL CARETAKER.

Father argues that the evidence preponderates against the juvenile court's finding that Mother was Shamar O.'s caretaker. The parties offered conflicting testimony concerning who served as Shamar O.'s physical custodian until he reached majority.

Father testified that Mother was "never around" during Shamar O.'s childhood and that the child resided with his grandparents. However, Father acknowledged in his written responses during discovery that Shamar O., Grandfather, and Mother resided at the same address.

Mother testified that she served as Shamar O.'s sole caretaker until he reached majority. Mother explained that she was in college when Shamar O. was born, and she consented to the legal guardianship in Mississippi so that Shamar O. could be added to Grandfather's health insurance policy. According to Mother, Mother and Shamar O. resided with Mother's parents intermittently throughout the child's life. However, Mother testified that Shamar O. resided with her during those periods when she resided outside of her parents' home. For example, Mother testified that Shamar O. resided with Mother and her husband during a period in which Mother was married.

Based on the Child Support Worksheets which reflect that Mother has been Shamar O.'s primary residential parent and which are incorporated by reference into the court's order, as well as the findings in the court's order regarding retroactive child support, it is clear that the court found Mother's testimony to be credible, and based its finding that Mother had custody of Shamar O. during his minority on her testimony. "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006.) We cannot conclude that the evidence preponderates against the trial court's finding that Mother was Shamar O.'s caretaker.

---

[13] Although we are "soldiering on" in this case, oral findings are no substitute for written rulings, and we may decline to "soldier on" in future cases without a clear written ruling.

## IV. MOTHER HAS STANDING

Father argues that Mother lacked standing to bring this suit to establish Shamar O.'s paternity and for retroactive child support. Tennessee law unequivocally provides that the mother of a child has standing to bring suit to establish parentage. *See* Tenn. Code Ann. § 36-2-305(b)(1)(B) ("A complaint to establish parentage of a child may be filed by . . . the child's mother.") Moreover, as we already stated, once a trial court has established paternity, it **must** enter an initial support order for the child. Tenn. Code Ann. § 36-2-311(a)(11)(A) ("Upon establishing parentage, the court shall make an order declaring the father of the child . . . [t]his order shall include the following . . . [a] determination of child support."). Tennessee law also confers standing to petition the court for child support on the child's physical custodian, or "caretaker." Tenn. Code Ann. § 36-5-101(b)(1). "Legal custody of a child to whom a child support obligation is owed shall not be a prerequisite to the initiation of any support action[.]" Tenn. Code Ann. § 36-5-101(b)(2).

For the reasons previously discussed, we cannot conclude that the trial court erred in determining that Mother was Shamar O.'s physical caretaker for the purpose of establishing retroactive child support. As Shamar O.'s mother and physical caretaker, Mother clearly had standing to petition the court for the establishment of paternity and child support.

## V. FAILURE TO JOIN AN INDISPENSABLE PARTY

For the first time on appeal, Father argues that the juvenile court erred by failing to dismiss Mother's petition for failure to join an indispensable party—Grandfather. Issues raised for the first time on appeal are considered waived. *See Dye v. Witco Corp.*, 216 S.W.3d 317 (Tenn. 2007) (citing *Black v. Blount*, 938 S.W.2d 394, 403 (Tenn. 1996)); *see also Griswold v. Income Properties II*, 880 S.W.2d 672, 678 (Tenn. Ct. App. 1993) (holding that the defense of failure to join an interested or indispensable party must be raised no later than trial on the merits). Because Father did not raise this issue in the juvenile court, we consider it waived, and will not address it here.

## VI. JUVENILE COURT ABUSED ITS DISCRETION IN CALCULATING PARENTING TIME

Father argues that the juvenile court erred in calculating child support by crediting Mother with 285 days of parenting time. Once again Father argues that Grandfather was Shamar O.'s caretaker, and, as such, should have been included on the child support worksheets. As already discussed, we have concluded that the record supports the trial court's finding that Mother was Shamar O.'s caretaker and primary-residential parent until he reached the age of majority. However, because Father compels us to address "whether the trial court erred in its calculation of support based upon the parenting time

- 9 -

awarded *to the parties*," we must now turn to examine the juvenile court's assignments of parenting time in light of the evidence in the record.

In cases involving child support, we review the trial court's determinations using the deferential "abuse of discretion" standard. *See Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005). We may not substitute our judgment for that of the trial court, and a trial court's discretionary decision will be upheld unless it is clearly unreasonable. *Id.* (citations omitted). "Discretionary decisions must, however, take the applicable law and the relevant facts into account." *See Spanos*, 189 S.W.3d at 725 (citing *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)). Thus, "a trial court will be found to have 'abused its discretion' when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *Id.* (citations omitted).

When calculating child support, courts must follow the Child Support Guidelines. Tenn. Comp. R. & Regs. 1240-02-04-.08(1)(a). First, a court must determine the parents' basic child support obligation (BCSO) based, in part, upon their respective incomes.[14] *Id.* at 1240-02-04-.08. The court must then make "adjustments" to the BCSO as required by the rules. *Id.* at 1240-02-04-.03(d). For example, the rules state, "[t]he BCSO shall also be adjusted based upon the parenting time of the [Alternate Residential Parent]." *Id.* at 1240-02-04-.03(d). Adjustments vary between individual cases, and "are not mandatory, but presumptive." *Id.* at 1240-02-04-.03(d). "The presumption may be rebutted in a case where the circumstances indicate the adjustment is not in the child's best interest." *Id.* at 1240-02-04-.04(7). Because each parents' child support obligation is offset based upon the number of days he or she *actually* exercises parenting time, the Child Support Guidelines indicate that the child support worksheets should reflect the "number of days each child spends with each parent."[15] *Id.* at 1240-02-04-.08(2)(a). Adjustments are

---

[14] In layman's terms, the BCSO is the total amount per month that the Child Support charts indicate should be expended towards the support of a child. The charts take into account each parents' income. The rest of the calculations determine what percent of the BCSO must be contributed by each parent. Typically, this means determining the amount that the Alternate Residential Parent will be required to pay the Primary Residential Parent monthly so that the Primary Residential Parent can use the payment towards the support of the child. The definition of "Basic Child Support Obligation," as defined by the Guidelines is, "the amount of support displayed on the Child Support Schedule (CS Schedule) which corresponds to the combined Adjusted Gross Income (AGI) of both parents and the number of children for whom support is being determined. This amount is reputably presumed to be the appropriate amount of basic child support to be provided by both parents in the case immediately under consideration, prior to consideration of any adjustments for parenting time and/or additional expenses." Tenn. Comp. R. & Regs. 1240-02-02-.02(5).

[15] The rules state, "[f]or purposes of this chapter, a 'day' of parenting time occurs when the child spends more than twelve (12) consecutive hours in a twenty-four (24) hour period under the care, control or direct supervision of one parent or caretaker. The twenty-four (24) hour period need not be the same as

- 10 -

presumed to apply, and must be factored in when calculating child support unless the court determines a deviation is in the best interest of the child. *Id*. at 1240-02-04-.04(7)(i) ("The presumption that less parenting time by the ARP should result in an increase to the ARP's support obligation may be rebutted by evidence.") However, when deviating from the presumptive amount of child support, the court's order must contain written findings of fact stating its reasoning, the presumptive amount before the deviation, and an explanation as to why the presumptive amount is not in the best interest of the child. *Id*. at 1240-02-04-.06(1).

In this case, because the entirety of Father's child support obligation is retroactive, we have the rare benefit of hindsight. Mother testified that Father never supported the child or visited the child. When asked how many nights Shamar O. had ever spent with Father, Mother responded, "[h]e hasn't spent any nights with [Father]." Mother testified that she did not know why Father never visited or contributed to Shamar O.'s support, and she stated that she never indicated to Father that she would prevent visitation or refuse monetary support for Shamar O. Father testified that he has known Shamar O. was his biological child since the child's birth, but Mother refused to allow Shamar O. to visit with him. Father testified, however, that he never provided support of any kind to Shamar O., had never visited with the child, or attempted to initiate legal proceedings for a court to establish visitation.

Despite the uncontroverted evidence that Father never exercised a day of parenting time in the first eighteen years of Shamar O.'s life, the juvenile court credited Father with eighty days a year on the child support worksheets. It appears from the transcript that the Special Judge originally proceeded in calculating child support by crediting Mother with 365 days and Father with zero days. However, upon the State's request, Father was credited eighty days. The following exchange took place when the court was determining child support:

> The Court:   Do you [have] the worksheet ready? See what we come up with. It's 365 and zero on the visitation, Mother's income was $2,901.50. Father's income $4,316. The mother gets a medical insurance expense—
>
> The State:   Your Honor, if I may, in most paternity matters, if paternity is established, because there's not been a legal right to visitation before paternity is established, the Courts usually use standard visitation even if the testimony is there hasn't been any, because there was no legal right to this—
>
> The Court:   Okay. You want me to do that so we can change that?

a twenty-four (24) hour calendar day. Accordingly, a 'day' of parenting time may encompass either an overnight period or a daytime period, or a combination thereof." *Id*. at 1240-02-04-.08(2)(a).

- 11 -

The State:    Yes, Your Honor.

The Court:    and 80 . . .

Despite the State's contention in the hearing transcript,[16] we are unable to discern the legal basis behind the court's order. Moreover, there is no factual or legal basis in the record to support the Special Judge's finding that Father should be credited with eighty days of parenting time. The evidence in the record clearly indicates that Father exercised zero parenting days. A trial court abuses its discretion when it "bases its decision on a clearly erroneous assessment of the evidence." *See Spanos*, 189 S.W.3d at 725. Accordingly, we must vacate the trial court's judgment as to the calculation of retroactive child support and remand so that child support may be calculated based on the actual number of days Father exercised parenting time. The court shall be entitled to reopen the proof on this issue and to hear whatever additional evidence it deems necessary to assist it in making its decision.

## CONCLUSION

For the aforementioned reasons, we affirm the judgment of the juvenile court except that part of the decision pertaining to the calculation of retroactive child support which we vacate. The juvenile court is free to reopen the proof, if necessary, to ascertain the number of days Father actually exercised parenting time and to recalculate Father's retroactive child support accordingly. The case is remanded for such further proceedings as are necessary and consistent with this opinion. Costs of the appeal are assessed against the Appellant Robert T. Because Robert T. is proceeding *in forma pauperis* in this appeal, execution for costs may issue if necessary.

_____
ARNOLD B. GOLDIN, JUDGE

---

[16] The State's brief also lacks citation to any legal authority to support its contention that Father should be credited with eighty parenting days when the award is entirely retroactive, and the evidence is undisputed that Father never exercised visitation or contributed to the support of his child.